UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:03-CR-78-TS |
| | ) | |
| ANTHONY LEE ROGERS | ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Anthony Rogers's Motion for New Trial [DE 111], filed on April 15, 2005. The Defendant submits that he is entitled to a new trial under Federal Rule of Criminal Procedure 33 because the interests of justice so require.

**BACKGROUND**

On April 12, 2005, a jury found the Defendant guilty of making a false statement on a federal firearms form in violation of 18 U.S.C. § 924(a)(1)(A) and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). For trial, the parties stipulated that the Defendant had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, stating that on October 1993, he was "convicted in the 264th District Court of Bell County, Texas, in case #43,228, of a felony for which he was sentenced to five (5) years." (Stipulation, DE 91.) The Defendant agreed to this stipulation so that the government would not introduce the name or nature of the conviction to prove the elements of the prior conviction. *See Old Chief v. United States*, 519 U.S. 172 (1997) (holding that a defendant charged with violating § 922(g)(1) can keep the specific nature of a prior felony from the jury if he stipulates the fact of the previous felony conviction). The Court read the stipulation, as well as a second stipulation and judicially noticed federal regulations,

into evidence at the beginning of the government's case in chief. The Defendant did not object to the stipulations or to the regulations either before or after they were read to the jury.

The Defendant testified at trial and the Court allowed the government to use the Defendant's prior conviction, which was for delivery of cocaine, to impeach him under Federal Rule of Evidence 609. The Court found that the factors the Seventh Circuit provided to guide a court's exercise of discretion under Rule 609 weighed in favor of admission. The Defendant objected on the basis that the conviction was over ten years old. After the trial, on April 14, 2005, the Court held a conference with the parties to more fully develop the record regarding admission of the conviction. On this same date, the Court issued on Opinion detailing its reasoning for allowing the government to impeach the Defendant using his prior felony conviction.

On April 15, 2005, the Defendant moved for a new trial arguing that his prior conviction was not admissible to impeach him because it was more than ten years old. He also contends that it was error for the Court to disclose to the jury that the Defendant was sentenced to five years when it read the parties' stipulation to the jury. On August 26, 2005, the government responded. On September 27, the Defendant replied.

**DISCUSSION**

The Defendant contends that it was error for the Court to allow the government to impeach him using his prior conviction and for the jury to hear the specific nature of that crime. He argues that he was released from prison more than ten years before the trial, and thus, the conviction was inadmissible under Federal Rule of Civil Procedure 609(b). The Defendant submits that *United States v. Gant*, 396 F.3d 906 (7th Cir. 2005), which the government relied on to determine that the

2

conviction was less than ten years old, is distinguishable because it never addressed the issue of whether Gant's release from prison was more than ten years old. Counsel for the Defendant provides his own affidavit setting forth his conversation with Gant's appellate counsel in support of the Defendant's argument that Gant was released from prison eight years before his trial and that Gant never argued that the admitted conviction was more than ten years old.

The Defendant argues that when the jury heard that his prior conviction was for delivery of cocaine, it "may well have confused the issues before it" and is even more likely that it convicted him "not because of charges pending against him, but rather because it was outraged at the nature of his prior conviction" and wanted to keep a drug dealer off the streets. (Def.'s Motion at 3–4.) The Defendant also argues that it was prejudicial to inform the jury that he received a five-year sentence.

The government responds that the conviction is less than ten years old and that even if it was outside the ten year period, a sufficient basis existed to use the conviction for impeachment under Rule 609(b) because the Defendant's credibility was a central issue at trial. The government also submits that any error was harmless because voir dire established the impartiality of the jurors, the Court gave a limiting instruction regarding the conviction, the Defendant himself made reference to the nature of his crime, and there was overwhelming evidence of the Defendant's guilt. The government also points out that the jury was already aware, from the parties' stipulation, that the Defendant had a felony conviction that carried a five year term of imprisonment.

**A.     Rule 33—Standard for New Trial**

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. A motion for new trial is warranted where

3

the evidence "preponderates so heavily against the verdict that it would be a manifest injustice to let the guilty verdict stand." *Unites States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989). A jury verdict in a criminal case is not to be overturned lightly. *United States v. Eberhart*, 388 F.3d 1043, 1048 (7th Cir. 2004); *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994). The exercise of power conferred by Rule 33 is reserved for only the most "extreme cases." *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998) (quoting *United States v. Morales*, 902 F.2d 604, 606 (7th Cir. 1990), *amended by United States v. Morales*, 910 F.3d 467 (7th Cir. 1990)).

### B.   Federal Rule of Evidence 609

Federal Rule of Evidence 609(a) provides that for purposes of attacking the credibility of a witness, evidence that an accused has been convicted of a felony shall be admitted if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect to the accused. However, 609(b) provides:

> Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. . . .

Fed. R. Evid. 609(b).

### C.   Defendant's Prior Conviction and Court's April 14 Opinion

On September 30, 1993, judgment was entered against the Defendant for his Texas cocaine conviction. The Defendant was sentenced to five years imprisonment, but on March 29, 1994, his sentence was modified to five years probation. The Defendant completed his term of probation on

4

March 30, 1999, six years before trial.

The government offered *United States v. Gant*, 396 F.3d 906, 909 (7th Cir. 2005), in support of its proposition that the ten-year period should be calculated from the end of probation. The Defendant argued that the period of his probation should not be considered "confinement" under Rule 609(b) and that the period of confinement ended on March 29, 1994, more than ten years before trial.

Believing that the conviction fell within the ten-year limit on the basis of the period of probation, the Court determined whether the probative value of the conviction outweighed its prejudicial effect using the five-part test articulated by the Seventh Circuit. *See United States v. Montgomery*, 390 F.3d 1013, 1015 (7th Cir. 2004); *United States v. Mahone*, 537 F.2d 922, 929 (7th Cir. 1976). The Court determined that the first factor, the impeachment value of the prior crime, favored exclusion because the prior conviction for delivering cocaine does not go to truthfulness. The second factor, the timing of the prior convictions, was not particularly significant for either exclusion or admission because while the conviction was not recent, the Defendant's discharge from probation fell within the ten-year period of admissibility specified in Federal Rule of Evidence 609(b).

However, the Court found that the remaining factors favored admission. The prior felony is dissimilar to the charged offense and thus would not tend to improperly suggest to the jury any tendency on the Defendant's part to commit the instant offense. The importance of the Defendant's testimony was not any more significant in this case than in other criminal matters. The Defendant offered evidence supporting his theory of the case through his girlfriend's testimony. She testified that she owned the guns and that she did not see the Defendant handle the guns after he initially gave

5

them to her. As for the false reporting charge, the Defendant's testimony about his perception of what "actual buyer" meant was not particularly significant in light of the evidence that the Defendant was indeed buying the gun for someone else. When the Defendant took the stand, his credibility became a central issue. The Defendant's account of events contradicted the testimony of federal agents and he also testified as to his knowledge and intent. In addition, given the stipulation regarding his prior conviction, the jury already knew that the Defendant had a felony conviction and thus, any deterrent effect on the Defendant— from knowing that the nature of his conviction would be admitted if he testified— was lessened.

As an additional safeguard against prejudice, the Court instructed the jury that the testimony regarding the prior conviction was to be used to assess the credibility of the Defendant and went to one of the elements of unlawful possession of a firearm, but could not be used for any other purpose.

For the foregoing reasons, the Court found that the probative value of admitting the prior felony outweighed its prejudicial effect to the Defendant, supporting admission under Rule 609(a).

**D.     *United States v. Gant***

In *United States v. Gant*, 396 F.3d 906 (7th Cir. 2005), the defendant was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). The Defendant argued, on appeal, that the district court abused its discretion in admitting his prior conviction for impeachment purposes. At trial, the court admitted Gant's 1986 conviction for possession of a controlled substance with intent to distribute. As background information, the Court of Appeals noted that Gant was sentenced to twenty years' imprisonment and was discharged from parole on October 14, 1995, eight years prior to trial. *Gant*, 396 F.3d at 909. Gant argued that the prejudicial effect of his

6

conviction outweighed its probative value because the conviction was remote in time and did not involve a crime of dishonesty. *Id.* The court concluded:

> Considering all the evidence presented at trial, the district court did not abuse its discretion in allowing the government to impeach Gant with evidence of his prior conviction. This conviction was within the ten-year limit set forth in Rule 609(b). Moreover, given Gant's theory of the case, his credibility was a crucial part of the trial.

*Id.* at 910.

Although at first blush, it may appear that the *Gant* court thought the date of Gant's discharge from parole to be an important one for calculating the ten year period, a closer look reveals otherwise. First, there is no indication that the parties in *Gant* disputed that the conviction was less than ten years old for purposes of Rule 609. In fact, Gant argued that the prejudicial effect of his conviction outweighed its probative value. 396 F.3d at 909. If subsection (b) applied because the conviction was more than ten years old, Gant would have argued that the probative value of his conviction did not "substantially" outweigh its prejudicial effect. *See* Fed. R. Evid. 609(b) ("Evidence of a conviction under this rule is not admissible . . . unless the court determines, in the interests of justice, that the probative value of the conviction . . . substantially outweighs its prejudicial effect."). Moreover, the case is devoid of any analysis of the meaning of "release from confinement" generally, or its application to Gant's parole. The court simply states that the conviction was within the ten-year limit set forth in Rule 609(b).

The meaning of "release from confinement" in the context of parole or probation was not of any interest to the Seventh Circuit because Gant was both released from prison and discharged from parole in 1995. The text of the *Gant* decision itself states that Gant claimed that the court failed to adequately consider his history as a productive member of society "following his release from prison

7

in 1995." In addition, this Court takes judicial notice of the fact that Gant presented, in his appellate brief, that he was paroled on February 24, 1995, and discharged from parole on October 14, 1995. *See* Seventh Circuit Cause No. 04-1970, Appellant's Brief (Sept. 17, 2004) (*available at* http://www.circ7.dcn/briefs.htm). Both of these dates were within the ten-year period and, thus, no import can be attached to the discharge date. There is no significance in the fact that the Seventh Circuit chose to note Gant's parole discharge date rather than his prison release date. Here, by contrast, the Defendant's discharge from probation in 1999 was within the ten year period, but his release from prison and placement on probation five years earlier, in 1994, was not.

The Advisory Committee Notes to Rule 609 do not support the government's position that parole and probation represent periods of confinement. The Notes provide the text of Rule 609(b) as initially submitted:

> Evidence of conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the release of the witness from confinement imposed for his most recent conviction, *or the expiration of the period of his parole, probation*, or sentence granted or imposed with respect to his most recent conviction, whichever is the later date.

Fed. R. Evid. 609, Notes to 1974 Enactment (emphasis added). The Notes state that under this formulation, a witness's entire past record of criminal convictions could be used for impeachment if the witness had been most recently released from confinement, or the period of his parole or probation had expired, within ten years of the conviction. *Id.*

> The Committee amended the Rule to read in the text of the 1971 Advisory Committee version to provide that upon the expiration of ten years from the date of a conviction of a witness, or of his release from confinement for that offense, that conviction may no longer be used for impeachment. The Committee was of the view that after ten years following a person's release from confinement (or from the date of his conviction) the probative value of the conviction with respect to that person's credibility diminished to a point where it should no longer be admissible.

8

*Id.*

Although the Seventh Circuit has not specfically addressed the issue, the Fifth Circuit has explicitly rejected argument that the date of "release from confinement" should not be calculated until the termination of a period of probation. *See United States v. Daniel*, 957 F.2d 162, 168 (5th Cir. 1992) (finding that the change in the language of Rule 609 cited in the historical notes foreclosed the interpretation that confinement included the period of probation); *see also United States v. Lopez*, 979 F.2d 1024, 1033 (5th Cir. 1992) (finding that because the defendant was given probation and was not confined, the date of the conviction controlled for purposes of Rule 609(b)'s time limit).

In *United States v. Ras*, the Seventh Circuit did not explicitly make a finding regarding the effect of probation or parole on Rule 609(b), but did find that the defendant's conviction was admissible under Rule 609(a), in part, because "the district court properly found that Ras' parole date of August, 1972, satisfied the ten-year rule of Federal Rule of Evidence 609(b)." 713 F.2d 311, 318 (7th Cir. 1983).

The Court finds that the Defendant's conviction was more than ten years old and that *Gant* does not dictate otherwise. He was released from confinement on March 29, 1994. Accordingly, subsection (b), not subsection (a) should have governed the Court's analysis of whether the conviction was admissible to impeach the Defendant.

**E.     Application of Rule 609(b)**

The government argues that even if the conviction was over ten years old, it would have

sought admission under subsection (b), and the Court would have been justified in admitting the prior felony, because the probative value of the evidence substantially outweighed any prejudicial effect. The government contends that the Defendant's credibility was crucial and the prejudicial effect was low because the crime was not similar to the one charged and the jury was already aware that the Defendant had a criminal record.

The Seventh Circuit has stated that the purpose of Rule 609(b) is to ensure that "'convictions over 10 years old will be admitted very rarely and only in exceptional circumstances.'" *United States v. Fallon*, 348 F.3d 248, 254 (7th Cir.2003) (quoting *United States v. Shapiro*, 565 F.2d 479, 481 (7th Cir.1977)). This case does not present the exceptional circumstance for which a conviction over ten years old is admissible.

The cases the government cites in support of admission are distinguishable. In *United States v. Redditt,* 381 F.3d 597, 600–01 (7th Cir. 2004), the prior conviction was for an act of dishonesty and the defendant's testimony was in "complete contradiction" to the testimony of the government witness. In *United States v. Payton*, 159 F.3d 49 (2d Cir. 1998), all the previous convictions involved crimes of false statements. In *United States v. Pritchard*, 973 F.2d 905, 909 (11th Cir. 1992), the defendant's criminal record took on "special significance" because the only other witness's criminal record was also before the jury. In *United States v. Holmes*, 822 F.2d 802 (8th Cir. 1987), the defendants could not claim that the probative value of his conviction decreased over time given his lengthy and steady record of criminal activity, of which the jury was already aware.

Here, the Defendant's conviction did not involve a crime of dishonesty and there were no intervening convictions. The government's case did not hinge on one witness who the Defendant contradicted on all accounts. The probative value of the conviction was also lessened because the

10

government had other avenues to impeach the Defendant. Specifically, his answers on his gun permit applications and enlistment eligibility questionnaire denying that he had a previous conviction. Although the government is correct that the jury was already aware that the Defendant had a prior felony and the crime was not similar to the one charged, the Court does not find that the probative value of the conviction "substantially" outweighed its prejudicial effect. The Court will discuss, *infra*, whether this evidentiary error warrants a new trial. First, the Court will discuss the Defendant's second objection to the evidence submitted at trial.

**F. Length of Sentence for Cocaine Conviction**

The Defendant claims that, not only was it error to use his conviction to impeach him, but that it was prejudicial for the jury to hear the length of his sentence. The Defendant admits that this information was included in the stipulation the parties filed with the Court. When the government requested the Court, at side bar, to read the stipulation of evidence to the jury, the Defendant did not object. The Defendant's counsel states in his reply brief that he was unaware that the court intended to read the sentence portion of the parties' stipulation and that it was error to do so. However, the Defendant did not object even after the Court read the entirety of the stipulation. This was the only time during the trial that the jury heard the length of the Defendant's sentence for his prior felony.

The Seventh Circuit recently held that reading the indictment to members of the venire during voir dire, which included the length of the defendant's sentence for a prior felony conviction, was unlikely to have affected the outcome of the trial. *United States v. Lewis*, 405 F.3d 511, 513 (7th Cir. 2005). In *Lewis*, the parties' stipulation was similar to the one entered in this case and provided for the fact of conviction and the length of the sentence. *Id.* The defendant later changed his mind

11

and wanted the length of the sentence withheld. *Id.* However, the judge mentioned the ten-year term of imprisonment during voir dire and counsel did not object. On appeal, the defendant challenged the reading of the indictment and the length of the sentence as clear error. The Seventh Circuit held that it "is quite unlikely that this brief mention, which the potential jurors themselves may have missed, could have affected the outcome of a trial in which the issue, when joined, was the complaining witnesses' credibility rather than anything related to [the defendant's] prior conviction." *Id.*

Here, the jury heard only a brief mention of the length of the Defendant's sentence and this fact was not even at issue—it was stipulated. The issues before the jury centered around the Defendant's knowing possession of firearms and his statement on forms used to purchase firearms. The Court does not think that the brief mention of the five year term of imprisonment had any bearing on the jury's decision on those issues.

Moreover, the Defendant does not provide any case holding that it is a violation of the defendant's rights to introduce the length of his sentence, particularly where that information is included in the stipulation filed with the court pursuant to *Old Chief*. The court must read the stipulation into evidence if the government is to be precluded from putting the nature of the previous felony into evidence to prove an element of the crime. The Defendant does point to *United States v. Robinson*, 8 F.3d 398, 409 (7th Cir. 1993), but the holding in that case is not applicable here. In *Robinson*, the court held that the government, when impeaching a witness with a prior conviction under Rule 609, cannot explore the circumstances and details of prior criminal conduct. The government's conduct in introducing the Defendant's cocaine conviction to impeach him is not at issue in this case nor can it be said that the Court's reading of the stipulation, including the length

of the sentence, is akin to exploring the details and circumstances of the Defendant's prior conviction.

**F.     Evidence in Support of Jury's Verdict**

The government contends that even if the admission of the conviction was error, the error was harmless because the Court gave a limiting instruction and the evidence in favor of the jury's guilty verdicts was overwhelming. The Defendant does not address these arguments but argues that the errors committed at trial resulted in unfair prejudice which should be corrected by granting his Motion for New Trial.

On a motion for new trial, the court must determine whether the verdict was so contrary to the weight of the evidence that a miscarriage of justice has occurred. The jury's verdicts in this case were not against the manifest weight of the evidence or against the interests of justice.

The facts surrounding the false reporting charge were not disputed at trial. The Defendant admitted that he was buying the gun for Charles Conner who told him where to buy the gun, which gun to buy, and provided him the exact amount of money for the purchase. The Defendant gave the gun to Conner the same day he bought it. The Defendant testified that Conner wanted him to buy the gun because Conner has misplaced his gun license and would have to wait for a background check to get a gun. His defense was that he was the "actual purchaser" as he understood that term because he was the person who physically went into the store and bought the gun. Despite this explanation, the jury had ample evidence to determine that the Defendant made a "straw purchase" of a firearm and, in doing so, made a false statement on ATF Form 4473 when he answered "yes" to the question: "Are you the actual buyer of the firearm indicated on this form? If you answer 'no'

13

to this question the dealer cannot transfer the firearm to you."

The jury's guilty verdict on the felon in possession charge was also supported by the evidence. There is no dispute that two firearms were recovered from an apartment where the Defendant spent eighty to eighty-five percent of his time and that the Defendant knew where the guns were located.

ATF Agent Wayne Lesser learned from an ATF compliance officer that the Defendant had purchased firearms and was possibly a felon. The compliance officer referred the matter to Agent Lesser to determine whether he was a convicted felon and if he needed to confiscate the firearms. Agent Lesser contacted the Defendant at the home of his girlfriend, Doris Shelton. Agent Lesser testified that he asked the Defendant if he still had the firearm and said he needed to see it because there may have been a possible duplication of a serial number on his gun and the Defendant agreed to meet with Agent Lesser at the apartment.

Agent Lesser and two other agents went to the residence and met with the Defendant. Shelton was also present. Agent Lesser and Agent Nolte testified that the gun referenced during the telephone conversation was on the dining room table. After discussing the straw purchase of another gun, Agent Lesser asked the Defendant if there were any other guns in the apartment. The Defendant took Agent Lesser to a night stand next to the bed and told him there was a firearm in the stand, which Agent Lesser retrieved. Agent Lesser told the Defendant that he was seizing the firearms and ammunition because the Defendant was a convicted felon.

The Defendant and his girlfriend, Shelton, both testified at trial that the Defendant purchased the guns for Shelton for her protection and that he showed her how to take the safety off, and aim and fire the guns. However, at trial, Shelton did not even recognize one of the guns. The Defendant

14

indicated that Shelton had never fired either gun. Shelton indicated that she kept the guns in the bottom of her night stand and that was where they were when the Agents arrived at her apartment. She stated that she took a gun from the stand to keep under the couch when she slept there, which was when the Defendant was away on drills. The Defendant also testified that there was no gun on the table when the Agents arrived but that Agent Lesser immediately asked if there were any weapons in the house. The Defendant testified that he took him to get a gun in Shelton's night stand and another in a file cabinet. The Defendant testified that he knew where the guns were kept, but did not intend to control them because he had given up ownership to Shelton. He stated that Shelton moved them around and at some time, one of the guns was in the file cabinet. He admitted that the file cabinet was not locked and that he spent a lot of time on the computer next to the file cabinet. The Defendant testified that Agent Lesser did not mention the gun on the phone. Neither the Defendant nor Shelton told the Agents that the guns belonged to Shelton.

The jury was also given the option, in closing argument and with the jury instructions, to find that even if the Defendant was telling the truth about the firearm not being on the dining room table, he constructively possessed them. The evidence supported such an instruction and the jury finding was not against the manifest weight of the evidence.

The jury also had reason to doubt the Defendant's testimony and find that he had actual possession of the firearms. The prior felony was not the only evidence that called the Defendant's veracity into question. When the Defendant sought to obtain an Indiana handgun license, he completed an application form that included the question, "Have you ever been convicted of any criminal violation, including DUI?" The Defendant answered "no" both times that he completed the application in an attempt to get a license. The state issued the Defendant a license on his second

attempt. The Defendant stated that he thought they would find the felony if it was out there and deny his permit, like they did the first time, and that the felony was off his record once he completed probation. The Defendant also sought twice to re-enlist in the Reserves and answered "no" to a similar, but more comprehensive, question regarding his criminal history: "Have you ever been arrested, charged, cited, held or detained in any way by any law enforcement agency to include juvenile authorities, police officers, Department of Natural Resources, Fish and Game wardens, military policy, et cetera, regardless of the disposition, whether the case resulted in no charges filed, fine, probation, dismissal or other disposition (this includes traffic tickets.)" The Defendant testified that a Sergeant ran a background check on him and told him to go ahead and put "no" on the application because nothing came back on the check. The felony had been discovered on the Defendant's first attempt to re-enlist but he decided to try again when he got a letter regarding re-enlistment.

The Defendant argues that the errors at trial worked an unfair prejudice on him but he does not argue that the evidence was insufficient to convict him of the charges. The Defendant may be suggesting that the jury convicted him because of the prejudicial nature of the drug conviction. However, this prejudice was diminished by the Court's instruction informing the jury that it could only consider evidence of the Defendant's prior conviction in deciding whether the government had proven an element of the offense of unlawful possession of a firearm and to determine if the Defendant's testimony was truthful. A jury is presumed to follow a court's instructions. *United States v. Puckett*, 405 F.3d 589, 598 (7th Cir. 2005) (citing *United States v. Linwood*, 142 F.3d 418, 426 (7th Cir. 1998)). Although the instruction informed the jury it could consider the conviction for impeachment purposes, and the Court has since determined that the conviction should not have been

16

admitted for that purpose, the jury had other, more compelling examples of the Defendant's dishonesty that it could consider when weighing the Defendant's testimony. Thus, even if the Defendant is arguing that prejudice resulted not only from the nature of the conviction, but from the fact that the jury found him not credible on the basis of the conviction, a new trial is not warranted. Moreover, even if the jury believed the Defendant regarding the gun not being on the table and his intentions to control the firearms, the evidence does not preponderate against the verdict because the jury could have determined that the circumstances supported a finding of constructive possession. Allowing the guilty verdicts to stand would not be a manifest injustice and the Court does not grant the Defendant a new trial.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for New Trial [DE 111] is DENIED.

SO ORDERED on October 4, 2005.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT