UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:03-CR-78 |
| | ) | |
| ANTHONY LEE ROGERS, | ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

The Government requests a modification of the terms and conditions of supervised release to require Defendant Anthony Lee Rogers ("Rogers") to sign an Authorization to Release Confidential Information from Mental Health Treatment Programs. (*See* Prob. Form 12D, Docket # 183.) Pursuant to the Federal Magistrate's Act, as amended, Title 28 U.S.C. § 636(b)(1)(B), (C), United States Code Title 18, §§ 3401(I) and 3583(e), and Federal Rule of Criminal Procedure 59(a), District Judge William C. Lee referred this matter to the undersigned Magistrate Judge for the issuance of a Report and Recommendation. (Docket # 184.)

Having conducted an evidentiary hearing on January 30, 2008,[1] (Docket # 186), pursuant to Federal Rule of Criminal Procedure 32.1, the undersigned Magistrate Judge recommends that the Government's request to modify the terms and conditions of Rogers's supervision be GRANTED. This Report and Recommendation is based on the following facts and principles of law.

---

[1] At the hearing, testimony was elicited from U.S. Probation Officer Ned Edington, Anthony Lee Rogers, and the Defendant's mother, Linda Rogers.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Rogers was sentenced on October 2, 2006, to forty-six months imprisonment followed by a three year term of supervised release, on charges of False Statement With Respect to Firearms Transaction Record and Felon in Possession of a Firearm.  (*See* Prob. Form 12D, Docket # 183.) Rogers's term of supervised release began on December 10, 2007, and as a special condition, the Court ordered him to "participate in a mental health treatment program which may include urine testing under a co-payment at the direction and discretion of the probation officer."   (*See* Prob. Form 12D, Docket # 183.)

While Rogers asserts that he is in fact participating in a mental health treatment program at the Veterans Administration hospital ("V.A. hospital" or "V.A.") in Fort Wayne, Indiana, he has declined to sign a general release form that would authorize the V.A. hospital to release confidential information about his treatment there, and the V.A. will not do so without the signed authorization form.[2]  Consequently, the Government has petitioned the Court to modify Rogers's conditions of his supervision to include the following special condition:

> The defendant shall sign the appropriate release of information forms, including United States Probation Office Form 11I, or any specific mental health counseling agency form, including specific forms for the Veterans Administration, for the purpose of monitoring his compliance with his special condition that he participate in a mental health treatment program.

(Prob. Form 12D, *see* Docket # 183.)

At the evidentiary hearing, U.S. Probation Officer Ned Edington testified that enforcing

---

[2]Specifically, United States Probation Office Form 11I, a form Rogers refuses to sign, authorizes the release of such information as "date of entrance to program; attendance records; drug detection test results; type, frequency, and effectiveness of therapy; general adjustment to program rules; type and dosage of medication; response to treatment; test results (e.g., psychological, psycho-physiological measurements, vocational, sex offense specific evaluations, clinical polygraphs); date of and reason for withdrawal or termination from program; diagnosis; and prognosis."  (Ct. Ex. 1.)

the conditions of Rogers's supervised release, and in particular his required participation in a mental health treatment program, has been impossible without the ability to communicate with Rogers's treatment provider. Edington testified that he needs information regarding Rogers's diagnosis, his prescriptions, his cooperation with the program, the doctors' expectations, any concerns or crises the probation officer may encounter, and how Rogers's mental health issues are affecting him and his supervision. Edington indicated that if Rogers had a crisis, Edington would not be able to respond to it or communicate about it with the doctors. According to Rogers's Presentence Report, he has previously been diagnosed and treated for depression, and apparently he still has mental health issues because on January 3, 2008, Rogers reported to the Probation Office, and according to Edington, appeared "very unsettled" and "shaky," and was hospitalized that night and for the next four days, as a result of a mental health episode. So far, however, Rogers has otherwise complied with his terms and conditions of supervised release and Edington recounts no problems or safety concerns involving home visits.

Rogers is receiving mental health treatment at the V.A. and has missed no appointments, and although he faithfully takes his medication, it was recently changed. Rogers admits to past suicidal thoughts, but none currently, and maintains that he has never attempted suicide. Rogers links his mental health condition to his military service in Desert Storm from August 1990 to April 1991, and that since then he has been receiving mental health treatment for depression.

Rogers's mother, Linda Rogers, has observed a change in Rogers's demeanor since his return from Desert Storm, but did not believe until recently that Rogers was a risk for suicide, and still does not think he is a threat to anyone. Further, she knows of no problems with his participation in the mental health program or any violations of the terms and conditions of his

3

release.

### III.  ANALYSIS

*A.  The Law*

The issue before the Court is whether the terms and conditions of Rogers's supervised release should be modified to require him to sign Probation Form 11I, or a similar form, authorizing his treatment provider to release information about his participation in a mental health program to his probation officer.

After considering various factors set forth in 18 U.S.C. § 3553(a) concerning the imposition of a sentence, the court may "modify, reduce, or enlarge the condition of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision[.]"  18 U.S.C. § 3583(e).  In addition to any mandatory conditions of supervised release provided for by statute and listed in United States Sentencing Guideline § 5D1.3(a), the Court may impose "any condition as set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(10) and (b)(12) through (b)(20), and any other condition it deems appropriate[,]" subject to the applicable § 3553(a) factors to be considered in imposing a sentence.  18 U.S.C. § 3583(d).  The Guidelines synthesize these factors:

> The court may impose other conditions of supervised release to the extent that such conditions (1) are reasonably related to (A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (C) the need to protect the public from further crimes of the defendant; and (D) the need to provide the defendant with needed educational or vocational training, medical

4

>care, or other correctional treatment in the most effective manner; and (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth above and are consistent with any pertinent policy statements issued by the Sentencing Commission.

U.S.S.G. § 5D1.3(b); *see also* 18 U.S.C. § 3583(d); 18 U.S.C. § 3553(a)(1), (a)(2)(B-D).

Included amongst the permissible discretionary conditions in § 3563(b) is the condition that the defendant "undergo available medical, psychiatric, or psychological treatment, including treatment for drug or alcohol dependency, as specified by the court, and remain in a specified institution if required for that purpose[.]" 18 U.S.C. § 3563(b)(9). Furthermore, the Guidelines include a Policy Statement providing for a "special" condition of supervised release "requiring that the defendant participate in a mental health program approved by the United States Probation office," provided that "the court has reason to believe that the defendant is in need of psychological or psychiatric treatment[.]" U.S.S.G. § 5D1.3(d)(5).

### B. The Parties' Positions

The Government maintains that it is impossible to enforce the original condition of Rogers's supervised release without the ability to freely discuss his mental health treatment with his provider. In particular, the Government asserts that the probation officer cannot verify that Rogers is actually complying with the condition and that up until now, the probation officer has been unable to monitor his treatment progress, thereby inhibiting his ability to assist Rogers. Without the ability to communicate with Rogers's doctors about his mental health issues, the Government also argues that it cannot properly assess whether he could be a danger to himself or the community. The Government further contends that Edington's safety is potentially at risk, given that he must conduct home visits without knowing Rogers's diagnosis, the side effects of any medications, or potential mental health crises.

5

Rogers, however, opposes the proposed modification, asserting that by participating in the V.A. mental health program, he has complied with all the terms and conditions of his supervised release. Rogers stated that he was willing to allow the V.A. to provide Edington with a letter confirming his successful participation, but he objects to the release of any details because in his view, the information is privileged and his rights under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936, supercede his conditions of supervised release.

### C. The Court Recommends that the Terms and Conditions of Rogers's Supervised Release Be Modified.

The initial special condition imposed by the Court, requiring that Rogers "participate in a mental health treatment program . . . at the direction and discretion of the probation officer" is not only authorized under United States Sentencing Guideline § 5D1.3(d) and 18 U.S.C. § 3563(b), but also is entirely appropriate. Implicit in that condition is the expectation that the probation officer will monitor the defendant's compliance and acquire the necessary information to craft appropriate modifications, or to respond to any crises. Indeed, no one seems to suggest that the Court could not have imposed the release requirement at the outset. Moreover, Rogers does not seem to challenge the proposition that requiring him to sign a release form aligns with the penological goals the Court must consider under Guideline 5D1.3(b) and 18 U.S.C. §§ 3553(a)(1) and 3553(a)(2)(B-D).

In particular, the proposed modification is reasonably related to "the nature and circumstances of the offense and the history and characteristics of the defendant[.]" U.S.S.G. § 5D1.3(b)(1)(A). Rogers's Presentence Report indicates that his mental health history includes a diagnosis of depression, which is presumably why the District Judge originally imposed a mental

6

health treatment condition.  Apparently the condition is also long-standing, since both Rogers and his mother testified that he has had mental health problems and treatment since his return from Desert Storm in the early 1990s.  It would also appear that his condition may have recently worsened, given his January 3, 2008, hospitalization and frequent medication adjustments.

In short, Rogers's history clearly shows a record of mental health issues that both his supervising probation officer and the Court must monitor in connection with his other conditions of release, to assist his reintegration into society.  This observation is underscored by the fact that the underlying offense for which Rogers was sentenced involved an attempt to procure two firearms illegally, suggesting that it is imperative that Rogers's mental health issues be monitored to ensure his own safety and that of the public.  *See* U.S.S.G. § 5D1.3(b)(1)(C).

In particular, Edington's personal safety needs to be considered, given that he will be conducting home visits and needs to be apprised of any issues or crises he might encounter there.  Of course, Rogers's safety also needs to be considered, a particularly important matter given his recent hospitalization and his admission at the hearing that he has experienced suicidal thoughts.  None of these concerns can be met without the ability to communicate with the V.A., or any other mental health provider, about Rogers's mental health.

The proposed modification is also reasonably related to "the need to provide the defendant with . . . medical care . . . in the most effective manner[.]"  U.S.S.G. § 5D1.3(b)(1)(D).  Without knowledge of what the mental health program entails and whether Rogers is making any progress, the probation officer cannot ensure that Rogers is in fact receiving the most effective medical treatment.  Indeed, one of Edington's functions is to assist with Rogers's reintegration into the community, making it critical that Edington ensure that Rogers is not just participating

7

in, but also benefitting from, the mental health program. Without an open dialogue with Rogers's treatment providers, Edington cannot fulfill his role.

Imposing the condition that Rogers sign the authorization form for release of information about his mental health treatment is "no greater deprivation of liberty than is reasonably necessary[.]" *See* U.S.S.G. § 5D1.3(b)(2). As explained above, open lines of communication with Rogers's treatment providers are essential to ensure that Rogers is complying with the program and benefitting from it; furthermore, such a dialogue allows the probation officer to be alert to any issues or crises that might be encountered. Indeed, the condition is consistent with, and compliments, the Sentencing Commission's policy statement § 5D1.3(d)(5), requiring that a defendant participate in an approved mental health program "[i]f the court has reason to believe that the defendant is in need of psychological or psychiatric treatment[.]" U.S.S.G. § 5D1.3(d)(5).

Nonetheless, Rogers poses two legal objections to signing the release form: (1) it would be a violation of those HIPAA regulations designed to protect the confidentiality of his medical records, *see generally* The Privacy Rule, 45 C.F.R. § 160; 45 C.F.R. § 164 subparts A and E; and (2) it would run counter to the therapist-patient privilege. He stated that although he is willing to share specific pieces of information, such as his prescriptions and information about the programs he participates in, he does not want his probation officer to have an unrestricted right to his mental health file or providers.

The thrust of the Privacy Rule promulgated under HIPAA is to protect against the misuse of health information and applies to those "covered entities" (e.g., health plans, health care clearinghouses, and health care providers) conducting health care transactions. *Id*. It does not

8

address, let alone preclude, a court compelling a mental health patient to sign a release form so his supervised release can be monitored.  Stated another way, since HIPAA governs the conduct of "covered entities," not health care recipients, its purpose will not be thwarted if Rogers is required to execute a release.

Rogers's assertion that the information is privileged also fails.  While *Jaffee v. Redmond*, 518 U.S. 1 (1996), recognizes a psychotherapist-patient privilege, noting that effective psychotherapy depends upon confidentiality, courts have upheld orders compelling the waiver of the privilege so that probation officers can review mental health treatment records.  *See United States v. Dupes*, 2008 WL 90073, at *4 (2d Cir. 2008) (upholding the district court's determination that waiver of therapeutic confidentiality was reasonably related to the defendant's rehabilitation and the public safety); *United States v. Lopez*, 258 F.3d 1053, 1057 (9th Cir. 2001); *United States v. Cooper*, 171 F.3d 582, 587 (8th Cir. 1999).  "While it could be argued that the waiver condition may retard [the defendant's] treatment, it very well may advance his treatment by allowing the probation officer to monitor [his] progress and, if necessary, make adjustments to his court-ordered therapy program."  *See Dupes*, 2008 WL 90073, at *4 (citing *Lopez*, 258 F.3d at 1057 (upholding a condition requiring release of mental health treatment records because "[t]he sentencing judge could well conclude that disclosure to the court and to the probation officer of information about [defendant's] status was necessary for successfully supervising his reintegration into society")).  "Moreover, allowing the probation officer access to information about [the defendant's] treatment could reasonably further public safety regardless of whether the treatment is effective or not."  *Id.* (citing *Cooper*, 171 F.3d at 587 (upholding a condition allowing the probation officer to review defendant's psychiatric and medical records

9

because it "reasonably amplifie[d]" the standard condition of answering the probation officer's questions truthfully)). Consistent with those cases, waiver is essential here so that the Court can monitor Rogers's treatment, all with a view toward rehabilitation and public safety.

Accordingly, Rogers's objections should be rejected and his terms and conditions of supervised release should be modified as set out in the petition. (Docket # 183.)

## IV. CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge recommends that the Court modify Rogers's conditions of supervised release and impose an additional term:

> The defendant shall sign the appropriate release of information forms, including United States Probation Office Form 11I, or any specific mental health counseling agency form, including specific forms for the Veterans Administration, for the purpose of monitoring his compliance with his special condition that he participate in a mental health treatment program.

The Clerk is directed to send a copy of this Report and Recommendation to counsel for the parties. NOTICE IS HEREBY GIVEN that within ten days after being served with a copy of this recommended determination a party may serve and file objections to the proposed findings or recommendations. Fed. R. Cr. P. 59(a). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO REVIEW. *Id*.

Enter for this 4th day of February, 2008.

S/Roger B. Cosbey<br>
Roger B. Cosbey,<br>
United States Magistrate Judge